[Cite as *State v. Horn*, 2025-Ohio-4492.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00010 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2024 CR 1404 |
| MICHAEL HORN | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: Sepember 25, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Kevin W. Popham, Appellate Judges

**APPEARANCES:** VICKI L. DESANTIS, for Plaintiff-Appellee; BERNARD L. HUNT, for Defendant-Appellant.

OPINION

*King, J.*

{¶ 1}   Defendant-Appellant Michael Horn appeals the January 21, 2025 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

Facts and Procedural History

{¶ 2}   On the evening of June 28, 2024, Ohio State Highway Patrol Sergeant Polasky was working routine patrol on I-77. At approximately 9:30 p.m., he noticed Horn traveling south near the Shuffel Street exit in his white panel van, without headlights. Polasky got behind Horn's van and activated his cruiser's overhead lights. As he pulled

behind Horn, he noted Horn drifted off the right side of the road. Instead of pulling over, Horn changed lanes to the center lane. When Horn failed to pull over immediately, Polasky used his cruiser's spotlight in case Horn had simply failed to notice the overhead lights. Horn continued driving even after Polansky turned on his siren. Horn continued to drive for 13 miles despite other troopers in five additional cruisers joining Polasky's effort to stop him. Horn drove at speeds of between five and thirty-three miles per hour over the speed limit as well as under the speed limit. He committed lane violations, drifted onto the shoulder, and followed other vehicles too closely.

{¶ 3}   Just before the Tuscarawas County line, troopers blocked the interstate and stopped Horn. Since they had no idea why Horn had failed to stop for 13 miles troopers conducted a felony stop, meaning Horn was surrounded by troopers with their weapons drawn. As Horn exited the van, he appeared to lack both balance and an understanding of the trooper's orders. Upon arrest, troopers further noted Horn was disheveled, smelled of alcohol, had slurred speech, and glassy bloodshot eyes. Horn had also urinated on himself.

{¶ 4}   Horn was transported to a State Highway Patrol post for processing for suspected OVI. When asked if he would submit to a breath test Horn indicated he would just take a nap instead. He then removed his shirt, laid down on a bench, and passed out. Troopers had difficulty rousing Horn and needed to use smelling salts to get him up and relocated to the Stark County jail.

{¶ 5}   As a result of these events Horn was charged with one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B)(C)(5)(a)(ii), a felony of the third degree, and one count of operating a vehicle

under the influence in violation of R.C. 4511.19(A)(1)(a)(G)(1)(a), a misdemeanor of the first degree. Horn entered pleas of not guilty to the charges and elected to proceed to a jury trial. Trial was originally set for August 21, 2024, but Horn failed to appear and a warrant was issued for his arrest. Horn was arrested on the warrant on November 30, 2024.

{¶ 6} Horn's jury trial began on January 7, 2025. The State called three troopers to testify and elicited the above outlined evidence. Horn took the stand in his own defense.

{¶ 7} Horn testified he had worked all day installing carpeting and was simply exhausted. He further stated he was experiencing multiple instances of family turmoil. He stated he therefore had his music turned up loud to escape his problems and did not hear the sirens, yet also stated he was on the phone when he was pulled over. Horn also testified he had his side mirrors adjusted outwards, and his view to the rear was blocked by the equipment in the van, so he did not see the troopers pursuing him. He claimed he did not notice other vehicles pulling over in response to the trooper's lights and sirens. He admitted to drinking one beer.

{¶ 8} After hearing the evidence and deliberating, the jury found Horn guilty as charged. He was subsequently sentenced to an aggregate total of 24 months of incarceration.

{¶ 9} Horn timely filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows:

I

{¶ 10} "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR ACQUITTAL BECAUSE APPELLANT'S CONVICTION OF FAILURE TO

COMPLY WITH THE ORDER OR SIGNAL OF A POLICE OFFICER WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

II

{¶ 11} "APPELLANT'S CONVICTION OF FAILURE TO COMPLY WITH THE ORDER OR SIGNAL OF A POLICE OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 12} We address Horn's assignments of error together. Horn argues his conviction for failure to comply with the order or signal of a police officer is not supported by sufficient evidence and is against the manifest weight of the evidence. Specifically, Horn argues he did not create a substantial risk of serious physical harm to persons or property, and did not willfully flee or elude troopers. We disagree.

Applicable Law

{¶ 13} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997) "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *Id.* at 390.

{¶ 14} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 15} Horn was convicted of failure to comply with the order or signal of a police officer pursuant to R.C. 2921.331(B)(C)(5)(a)(ii), a felony of the third degree. That section states:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
>
> . . .
>
> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

. . .

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶ 16} "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8). R.C. 2901.01(A)(6) provides, "serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶ 17} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

### Horn's Arguments

{¶ 18} Horn argues the state failed to demonstrate that his operation of his vehicle caused a substantial risk of physical harm to persons or property or that he willfully fled or eluded police.

{¶ 19} Testimony from three troopers involved in the pursuit established that as soon as Trooper Polasky pulled behind Horn, Horn drifted off the right side of the road, then instead of pulling over in response to Polasky's overhead lights, pulled into the center lane and was traveling at five miles above the posted speed limit. Other motorists were slowing down in response to Polasky's siren and lights, but Horn continued fleeing for 13 miles, including travel through a construction zone with workers present. Horn's speed fluctuated from under to over the speed limit, at one point reaching a speed of 83 miles per hour. Transcript of trial, volume one (T(I).) at 119-128.

{¶ 20} Polasky instructed Trooper Whitacre to take over as the lead car in the pursuit so that Polasky could fall back and monitor the situation. Whitacre testified Horn traveled in excess of the speed limit, and committed lane violations by either drifting onto the shoulder or out of his lane, and followed other vehicles too closely. T. 175, 178.

{¶ 21} Trooper Goodnite assisted Polasky and followed Horn from the Shuffel Street exit to where he was eventually stopped. T.(I) 200, State's exhibit 3. Goodnite testified Horn was operating his van without headlights, continued driving even though multiple troopers attempted to stop him, followed a truck too closely, and created a risk of secondary crashes due to other motorists slowing down in response to the trooper's lights and sirens. Transcript of trial, volume two (T.(II)) 47-49, State's exhibit 3.

{¶ 22} The jury also viewed dash and body camera footage of the incident. State's exhibits 1-4.

{¶ 23} We find the State's evidence demonstrated Horn's traffic violations, and refusal to stop until he met a blockade created a substantial risk of serious physical harm to himself, other motorists, and the troopers involved in the stop. Moreover, Horn was driving while heavily intoxicated. As the State notes, this court has found that a substantial risk of serious physical harm to one's self is sufficient to support a conviction under R.C. 2921.331(B). *State v. Hopkins*, 2010-Ohio-2441 ¶ 22 (5th Dist.); *State v. Wilson*, 2020-Ohio-1217, ¶ 35 (5th Dist.). Further, the State was not required to prove Horn's conduct actually or almost caused serious physical harm to demonstrate substantial risk, because the lack of an accident "speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that Appellant's reckless driving created." *State v. Love*, 2004-Ohio-1422, ¶ 19 (9th Dist.).

{¶ 24} Horn further argues the evidence was insufficient to demonstrate that he willfully fled or eluded the troopers. In support, he points to his own testimony stating that he simply did not see or hear the five cruisers pursuing him or notice other motorists

pulling over in response to the trooper's sirens and lights. The jury heard this evidence and was free to believe all, part, or none of Horn's testimony. Simply because the jury believed the State's evidence over Horn's testimony does not render Horn's conviction against the sufficiency or manifest weight of the evidence.

{¶ 25} Upon review of the entire record, we find the evidence presented by the State sufficient to prove each element of the offense of failure to comply with the order or signal of a police officer and that Horn created a substantial risk of serious physical harm to persons or property. We additionally find the jury did not lose its way in making its credibility determinations. Accordingly, the first and second assignments of error are overruled.

{¶ 26} The judgment of the Stark County Court of Common Pleas is affirmed.

{¶ 27} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.

{¶ 28} Costs to Appellant.


By: King, J.

Baldwin, P.J. and

Popham, J. concur.